[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO STRIKE
This action arises out of the unfortunate death of the plaintiff's decedent while attempting to replace or repair a hydraulic cylinder in a bucket loader at his place of employment. Count One alleges willful and serious misconduct on the employer, based in part because of an alleged similar incident resulting in an employee's death two year's earlier and claimed OSHA violations. Count Two sets forth a wrongful death claim pursuant to Connecticut General Statutes § 52-555. Count Three is a loss of spousal consortium claim.
The defendant filed a motion to strike all counts, to which the plaintiff has objected. The crux of the defendant's motion is that the conduct alleged does not bring this case within the narrow exception to the exclusivity provisions of the Worker's Compensation Act, Connecticut General Statutes § 31-284. For the reasons stated in detail below, the court grants the motion to strike.
 DISCUSSION
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.)Faulkner v. United Technologies Corp., 240 Conn. 576, 580, 693 A.2d 293
(1997). The court is to "determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) Dodd v. Middlesex Mutual Assurance Co., 242 Conn. 375, 378,698 A.2d 859 (1997). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Faulkner v. United Technologies Corp., supra, 240 Conn. 580."[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied . . ." (Citation omitted; internal quotation marks omitted.) Lombard v. Edward J. Peters, Jr., P.C.,252 Conn. 623, 626, 749 A.2d 630 (2000).
1. The Exclusivity Provisions of the Worker's Compensation Act
The substantive questions involved in this motion are governed by the twin opinions of our Supreme Court in Suarez v. Dickmont Plastics Corp.,229 Conn. 99, 639 A.2d 507 (1994), Suarez I, and Suarez v. DickmontCT Page 7903Plastics Corp., 242 Conn. 255, 698 A.2d 838 (1997), Suarez II, and invoke the substantial certainty exception to the Worker's Compensation rule of exclusivity. In Jett v. Dunlap, 179 Conn. 215, 425 A.2d 1263 (1979), the Connecticut Supreme Court first carved out an exception to the exclusive remedy provision of General Statutes § 31-284 (a){fn1} of the Workers' Compensation Act for intentional tortuous conduct by an employer. In Suarez v. Dickmont Plastics Corp., 242 Conn. 279, 280, supra, (Suarez II), the court explained that:
 "[s]ince the legal justification for the common-law action is the non-accidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot . . . be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury. What is being tested is not the degree of gravity of the employer's conduct, but, rather, the narrow issue of intentional versus accidental conduct." (Citation omitted; internal quotation marks omitted, emphasis added.)
The court articulated that:
 "Therefore, to escape the exclusivity of the act, the victim of an intentional injury must rely on the intended tort theory or the substantial certainty theory. Under the former, the actor must have intended both the act itself and the injurious consequences of the act. Under the latter, the actor must have intended the act and have known that the injury was substantially certain to occur from the act."
In its analysis, the Suarez II court stated that the intentional tort test, based as it is on a specific intent to cause a specific injury, would allow employers to injure or kill their employees and pay out only workers' compensation damages if an employer did not specifically intend to hurt the worker. This could lead to a corporation making investment decisions balancing costs of improvement with decisions, which would lead to the death of their employees. It was for this reason that Suarez added a "substantial certainty test. It stated: "The substantial certainty test provides for the intent to injure exception to be strictly construed and still allows for a plaintiff to maintain a cause of action against an employer where the evidence is sufficient to support an inference that CT Page 7904 the employer deliberately instructed an employee to injure himself."Suarez v. Dickmont Plastics Corp., 242 Conn. 258, supra.
The logical difficulties in applying the test to any specific set of facts and not extending the exception to swallow up the rule are carefully reviewed in Recalde v. Emhart Industries, Inc.,1999 Ct. Sup. 1272, Docket No. CV96-0053222, Superior Court, judicial district of Ansonia-Milford at Milford (February 4, 1999, Corradino, J.) The court noted at page 1280, 1281:
 "These certainly justifiable concerns can be addressed without opening the Pandora's box..........if, in effect, the substantial certainty test, is broken down into its component parts. First it should be viewed from a solely factual or empirical perspective — did act A cause injury B to a substantial certainty. This then should be combined with a belief test regarding the likelihood of injury that requires the production of predicate facts to show the belief as to injury in fact existed. That is (1) from a purely physical perspective was the intentional doing of act A substantially certain to cause injury and (2) did the employer in fact believe this to be so. Belief would be established, for example, though prior warnings of accidents involving certain equipment, orders or threats to proceed with a job known by prior experience to be dangerous."
2. The Facts alleged in the complaint
Resolution of the competing claims of the parties requires a detailed review of the facts alleged in the plaintiff's operative complaint, as the facts are taken to be true for purposes of this motion to strike. On September 22, 1999, Richard Gagne was run over and crushed by a bucket loader after he was instructed by his supervisor to measure the hydraulic cylinder and cutting edge on the bottom of the bucket, a task which required him to place his body in front of the right front tire of the bucket loader, in a position where he was invisible to the loader's operator. Gagne told the operator that he needed to measure the hydraulic piston of the bucket loader on the morning in question. At that time, the bucket was in its extended position and off the ground. After being told about Gagne's task the operator walked over to another employee and told him to follow, as he would be operating the bucket loader. The operator then, about a minute later, got into the right side of the loader, and after checking his mirrors and looking around, believing the area to be clear, moved the bucket loader about two feet, crushing the plaintiffs CT Page 7905 decedent.
The complaint alleges that two years earlier, in another facility of the defendant's, another employee was attempting to tighten or remove a leaking hydraulic filter on a forklift and had therefor placed it on a jack. It fell off the jack and crushed the employee between the truck and the concrete floor. It also states that the defendant had failed to establish a safety policy which would have required that during repairs all machinery was disconnected from its power source, that chocks were to be placed by the wheels, preventing any movement, and other safety precautions established while mechanics were working on motorized vehicles. The complaint states that the supervisor who directed Gagne to perform the repairs knew, or should have known, of the earlier incident, and knew, or should have known, that the first accident was caused by the failure to have safety procedures in place. Further, the supervisor knew that neither Gagne, the bucket loader operator nor the other employee had been trained in appropriate safety measures for such repair operations.
Plaintiff claims that the supervisor knew or should have known that the Gagne's injuries were substantially certain to occur. Defendant claims "not so" and cites Melanson v. West Hartford, 61 Conn. App. 683,767 A.2d 764 cert. denied 256, Conn. 904 (2001) and Wunder v. Miceli,2002 Ct. Sup. 102. Docket No. CV01-0123424, Superior Court, judicial district of New London at Norwich (January 3, 2002, McLachlan, J.), for the proposition that the failure to establish safety programs in and of itself is inadequate to establish intentional conduct for purposes of the narrow exception to exclusivity provisions of the worker's compensation act. But the case at bar contains more facts than the cited cases which rely generally upon the failure to establish a safety program. It contains the inexplicable act of another employee, the bucket loader operator, who proceeded to move his machine only a short while after being told the mechanic was going to work on it.
In resolving these issues, the two-part factual analysis as articulated in Recalde, supra, is of assistance. The first question to be answered is: did act A cause injury B to a substantial certainty? In this instance, did the fact that the supervisor told Gagne to measure the hydraulic piston while there was no safety program in place and knowing of the earlier incident in another facility lead inexorably to the result, which took place. The court finds that this was not so, since the supervisor would have no way of knowing that the bucket loader operator would proceed to ignore what Gagne told him he was doing only shortly before. The court therefore has no need to reach the second question: did the supervisor believe this was so? Even answering the second question is of no assistance to the plaintiff since there is no such allegation in the compliant. Rather the failure to establish a safety program and the CT Page 7906 OSHA violations are relied upon. Even if it could be said that there was a high risk or probability of harm in this case, such risk is not the equivalent to a substantial certainty without which an actor cannot be said to intend the harm from which his act results. Mingachos v. CBS,Inc. 196 Conn. 91, 101, 491 A.2d 368 (1985). As was stated by Justice Peters in Melanson, "even if the allegations somehow could be stretched to encompass a claim for intentional misconduct generally, the complaint provides no factual basis for a finding that [the defendant] was substantially certain that the specific injury that the plaintiff suffered would occur." Melanson v. West Hartford, supra, 61 Conn. App. 689.
A review of the facts of Suarez as well as the other state court cases from other jurisdictions reviewed in Recalde permitting the exception all set forth circumstances where, from a policy perspective, the conduct of the employer was egregious in failing to consider the safety of the employee.[1] For example, in Suarez, the plaintiff was required to clean hot material from a horizontal injection-molding machine with his bare hands while the machine was still producing plastic parts. He was not permitted to stop the machine while cleaning it nor could he use an industrial vacuum. Two fingers were partially amputated from his right hand while he was removing hot material from one of the machines.
Even taking the facts as alleged in the complaint to be true for purposes of the motion to strike, the court cannot find that the allegations set forth adequate facts to meet this narrow exception. It is for all of the foregoing reasons that the court finds that plaintiffs first and second counts are barred by the exclusive remedy provision of our Workers' Compensation Act, General Statutes § 31 284. The third count is for loss of consortium and is derivative of the other two. Since they fail, it also fails. For the foregoing reasons, the court grants the motion to strike all three counts.
BY THE COURT
 ___________________ BARBARA M. QUINN, Judge